IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                            **Case No. 11-40068-01-RDR**

TERRI L. MORRIS,

        Defendant.

### **MEMORANDUM AND ORDER**

Defendant was the Postmaster at the Whiting, Kansas Post Office in August 2010. An audit was conducted of the post office during that month. As a result, criminal charges were filed in this case. This matter proceeded to trial upon an indictment charging defendant with one count of embezzlement in violation of 18 U.S.C. § 641, and two counts of making a false statement in violation of 18 U.S.C. § 1001(a)(3). A jury convicted defendant on all three counts. This matter is now before the court upon defendant's motion for judgment of acquittal (Doc. No. 55) and motion for new trial (Doc. No. 56).

    <u>Motion for judgment of acquittal</u>

When deciding a motion for judgment of acquittal under FED.R.CRIM.P. 29, the court views the evidence in the light most favorable to the government and determines whether there is sufficient evidence from which a jury could properly find the accused guilty beyond a reasonable doubt. <u>U.S. v. Parker</u>, 521

F.Supp.2d 1174, 1176 (D.Kan. 2007). "Acquittal is proper only if the evidence implicating defendant is nonexistent or is 'so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" Id. (quoting U.S. v. White, 673 F.2d 299, 301 (10th Cir. 1982)). If the jury's inferences and conclusions are reasonable, the court will not disrupt the verdict. U.S. v. Dazey, 403 F.3d 1147, 1159 (10th Cir. 2005). The court does not weigh conflicting evidence or evaluate witness credibility in deciding whether the evidence is sufficient to support a verdict. Id.

The evidence in this case, viewed in a light most favorable to the government, showed that there was missing stamp stock at the Whiting Post Office in August 2010. An audit of the post office showed that there was stamp stock worth more than $1,000 missing from two drawers to which defendant had exclusive access. At or near the time of the audit, defendant admitted there was missing stamp stock and she could not explain why it was gone. While the audit was ongoing, defendant was emotionally distraught. There was evidence that defendant made an extraordinary number of emergency orders to supplement the stamp stock at the Whiting Post Office during her tenure as postmaster and that several days prior to the audit defendant borrowed stamps from an area post office upon the false representation that the stamps were needed to fill a large order. Evidence was presented that defendant was living under financial pressure and that she often gambled at casinos. Thus,

2

there was evidence of a motive to embezzle.

There was also evidence that defendant had a long tenure as a postal employee. Defendant had been the Postmaster at the Whiting Post Office since 2004, and on multiple occasions she helped train other postmasters in the daily operations of a post office. One of defendant's obligations as the Whiting Postmaster was to file a daily financial reporting sheet with U.S. Postal Service authorities which would detail the stamp balance for the post office on the date of the report. The evidence at trial showed that the reports filed by defendant on August 12, 2010 and August 23, 2010 misrepresented the stamp stock present at the post office. The August 12 report did not account for stamp stock defendant borrowed from another post office. The August 23 report overstated the amount of stamp stock present at the post office as discovered by the audit of the post office conducted the following day. Defendant was told on August 20, 2010 that there was a concern by the postal officials regarding discrepancies in the stamp stock. Despite her knowledge of this concern, the evidence shows that the report defendant filed on August 23, 2010 was false.

Defendant's main argument regarding her embezzlement conviction is that the evidence did not demonstrate that she had sole access to the cash drawers or stamp stock and, therefore, no reasonable jury could find that she was guilty of embezzlement beyond a reasonable doubt. See U.S. v. Bouknight, 800 F.2d 432 (4th

Cir. 1986). While this argument was grounds for reversing a conviction of a postal window clerk at the Pentagon Post Office in Bouknight, the court believes the evidence in this case is sufficient to sustain defendant's conviction. The circumstances were different in this case. Defendant was the postmaster in charge of a very small post office with only two employees. She had the task of keeping daily track of stamps and money. There was evidence that she had sole access to the stamp drawers where shortages were found. There is no evidence that other postal employees were linked to significant stamp or money shortages at Whiting or other post offices where they worked. There is no evidence that these employees or anyone else had access to the drawers where the shortages were documented. In Bouknight, there was evidence of a missing key to the defendant's cash drawer. The court mentioned a possibility that the defendant's predecessor had made a duplicate key. Furthermore, the defendant in Bouknight testified that she occasionally left her drawers unlocked and unattended while she ran errands. In this case, no plausible scenario has been offered to explain how another person was responsible for the embezzlement charged in this case or why defendant did not discover and report a loss caused by someone else.

Defendant argues that the evidence was insufficient to establish that she knowingly made false statements in violation of

§ 1001(a)(3). The court disagrees. Defendant was an experienced postmaster who had been relied upon to train other postmasters. The evidence shows that she borrowed stamps from another post office, but did not report it. The evidence further shows that she misstated the stamp balances at her post office even though she had notice from postal officers that there might be discrepancies in the stamp stock accounting a few days earlier. Defendant stated that she knew stamp stock was missing, yet she did not report the shortages. The evidence supports her convictions for making false statements.

Motion for new trial

Defendant argues for a new trial on the grounds of prosecutorial misconduct. Defendant also argues that the court mistakenly barred some evidence defendant attempted to introduce. The court has the authority to order a new trial "if required in the interest of justice." FED.R.CRIM.P. 33. Such motions, however, are viewed with disfavor and granted only with great caution. U.S. v. Caraway, 516 F.Supp.2d 1219, 1211 (D.Kan. 2007).

Defendant contends that in two ways the misconduct of the prosecutors in this case requires a new trial. First, defendant contends that, in contravention of a court order upon defendant's motion in limine, a prosecutor during the trial asked defendant whether she had previously been disciplined for a shortage of funds or stamps. The court, however, sustained an objection to this

5

question.  So, the jury heard no evidence on this point.  Second, defendant contends that a prosecutor improperly argued during closing argument that defendant had the same opportunity to subpoena witnesses as the government.  This comment was made in response to defense counsel's remarks in closing which asked why the government did not present the testimony of a person who participated in the audit of the Whiting Post Office.  Defendant admits that the prosecutor's closing argument was technically proper, but still maintains that it "undermined the fundamental fairness of the trial."  Doc. No. 56 at p. 28.

Prosecutorial misconduct does not warrant reversal of a jury verdict if it was not, in fact, improper or if it was harmless error.  U.S. v. Santiago, 977 F.2d 517, 519-20 (10th Cir. 1992). Non-constitutional error is harmless unless it had a substantial influence on the outcome of the case or leaves one in grave doubt as to whether it had such effect.  Id. (quoting U.S. v. Lonedog, 929 F.2d 568, 572 (10th Cir. 1991)).  In making this assessment, the court considers the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole.  Id.

The court finds that neither alleged instance of prosecutorial misconduct improperly affected the outcome of the trial in this case for the following reasons.  First, as discussed previously in connection with defendant's motion for acquittal, the evidence

against defendant was strong. It may have been circumstantial as regards the embezzlement count, but it was compelling. Second, both incidents of alleged misconduct did not play a prominent role in the trial of the case. Third, the court sustained defendant's objection to the question regarding prior bad acts by defendant. The jury was instructed more than once during the course of the trial that questions by counsel and statements by counsel did not constitute evidence. So, there is no reason to believe the jury considered the prosecutor's question during their deliberations. See U.S. v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998) (courts assume that juries follow the instructions they receive); U.S. v. Lopez, 576 F.2d 840, 846 (10th Cir. 1978) (witness statement that defendant was "involved in everything" did not warrant reversal when court sustained objection and instructed jury to disregard the testimony). Also, as conceded by defendant, the prosecutor's remark during closing argument was not improper. "As long as evidence can be solicited other than from the mouth of the accused, it is proper to comment upon the failure of the defense to produce it." U.S. v. Gomez-Olivas, 897 F.2d 500, 503 (10th Cir. 1990).

As mentioned, defendant also contends that a new trial is warranted because of an error by the court. Citing U.S. v. Oldbear, 568 F.3d 814 (10th Cir. 2009) and U.S. v. Dowlin, 408 F.3d 647 (10th Cir. 2005), defendant asserts that the court improperly excluded evidence of approximately fifteen cancelled checks from a

7

friend of defendant which allegedly would have shown that she gambled at casinos with defendant and that she supplied some of the money with which they gambled. As in Oldbear and Dowlin, the court finds that defendant's argument does not support relief from the jury's verdict.

Both defendant and her friend testified during the trial that they gambled together at casinos, that defendant's friend used defendant's gambling card, and that they shared in the winnings and losses. Defendant testified that she also gambled with family members. None of this testimony was rebutted. It should be noted that the evidence from the government established that defendant gambled many more than 15 times in 2010. This also was not rebutted.

While it is possible that the cancelled checks may have indirectly verified the testimony of defendant and her friend, this testimony was never disputed and did not need verification. The probative value of the cancelled checks was also weak because they only contributed to an argument which mitigated but certainly did not eviscerate the government's evidence of a motive for embezzlement. Even if defendant shared some of the gambling costs with a friend, it remains that she frequently gambled and lived from paycheck to paycheck. This was evidence of a motive to embezzle which the cancelled checks could not rebut.

In light of these circumstances, the court does not believe it

8

was error to exclude the evidence of the cancelled checks. The checks were insufficiently relevant to a consequential issue at trial to warrant the time and attention of the court and the jury. See FED.R.EVID. 403 (relevant evidence may be excluded due to considerations of delay, time wasting or needless presentation of cumulative evidence). Even if it was error, the court does not believe it infringed upon defendant's due process rights or that it affected in any measure the outcome of defendant's trial. The cancelled checks had nothing to do with the false statement counts and, in the court's opinion, could not influence the jury's decision that defendant was responsible for the embezzlement from the drawers to which she had exclusive access and from the tiny post office in which she was in charge.

Conclusion

For the above-stated reasons, defendant's motion for judgment of acquittal and motion for new trial shall be denied.

**IT IS SO ORDERED.**

Dated this 16th day of August, 2012 at Topeka, Kansas.

                                  s/Richard D. Rogers
                                  United States District Judge